# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| RIA SCHUMACHER, )<br>Individually and on Behalf of All Others )<br> )<br>      Plaintiffs, )<br> )<br>      v. )<br> )<br>SC DATA CENTER, INC. d/b/a )<br>COLONY BRANDS, INC., )<br>      Defendant. ) | No. 2:16-cv-04078-NKL |

## ORDER

Defendant SC Data Center, Inc. moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss this Fair Credit Reporting Act case in its entirety for lack of subject matter jurisdiction, based on the United States Supreme Court's recent decision in *Spokeo v. Robins*, 136 S.Ct. 1540 (2016). [Doc. 16]. At oral argument on this motion and in her supplemental briefing, Plaintiff Ria Schumacher requested that the Court enforce the parties' May 12, 2016 settlement agreement. [Doc. 51]. For the following reasons, the Court grants Schumacher's request to enforce the settlement and denies SC Data's motion to dismiss.

**I.    Background**

On behalf of a class, Plaintiff Ria Schumacher brings three claims under the Fair Credit Reporting Act arising out of her employment application with Defendant SC Data Center, Inc. In August of 2015, Schumacher applied online for employment with SC Data. In Count I, titled "Adverse Action Violation," Schumacher alleges that SC Data violated 15 U.S.C. § 1681b(b)(3)(A) of the FCRA by failing to provide her with pre-adverse action notice. Specifically, she alleges that SC Data did not provide her with a copy of her consumer report and

a reasonable time to cure or explain any inaccuracy in the consumer report prior to rescinding her employment offer.  [Doc. 1-1, p. 7, 12].

Count II concerns improper disclosure.  Schumacher alleges SC Data violated § 1681b(b)(2)(A)(i) of the FCRA by using a form containing extraneous information to procure consumer reports, even though SC Data "knew" its form should consist solely of the FCRA disclosure.  [Doc. 1-1, p. 14].  Also related to SC Data's use of this form, Count III concerns improper authorization.  Schumacher alleges that SC Data violated § 1681b(b)(2)(A)(ii) by acting with deliberate or reckless disregard of its FCRA obligations and procuring her consumer report without her proper authorization.

Schumacher filed this action on February 3, 2016, in the Circuit Court of Cole County, Missouri.  SC Data removed the matter to this Court on March 4, 2016.  On May 12, 2016, the parties attended mediation with Richard Sher, an experienced mediator in Saint Louis, Missouri.  During this mediation, the parties reached a settlement.  On May 16, 2016, the Supreme Court decided *Spokeo v. Robins*, 136 S.Ct. 1540 (2016), which addressed Article III standing within the context of FCRA claims.  Then, on July 15, 2016, SC Data filed the present motion to dismiss, citing *Spokeo* for the proposition that Schumacher's FCRA claims lacked sufficient concreteness to provide standing.

At oral argument on SC Data's motion to dismiss, Schumacher  requested that the Court enforce the parties' previous May 12, 2016 settlement agreement.  On August 17, 2016, the Court invited supplemental briefing on its subject matter jurisdiction to enforce the settlement, which the parties filed.  [Docs. 51 and 52].

**II.     Discussion**

SC Data moves for dismissal under Federal Rule of Civil Procedure 12(b)(1) contending that this Court lacks subject matter jurisdiction over the present action.  Specifically, SC Data argues that Schumacher lacks Article III standing to bring her claims in light of the United States Supreme Court's recent decision in *Spokeo v. Robins*, 136 S.Ct. 1540 (2016).  However, because the parties entered into a settlement agreement that Schumacher wishes to enforce, the issue is not whether the Court has subject matter jurisdiction over her FCRA claims.  Instead, the issue is whether the Court has subject matter jurisdiction to enforce the parties' settlement agreement.

The Third Circuit addressed a similar situation in *Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3rd Cir. 2010).  *Ehrheart* involved a class action in which the plaintiff buyers alleged that the defendant Verizon Wireless violated the Fair and Accurate Credit Transaction Act.  *Id.* at 592.  Like Schumacher and SC Data, the *Ehrheart* parties participated in mediation.  *Id.*  Meanwhile, legislation was pending before Congress that, if passed, would eliminate all of the plaintiffs' FACTA claims.  *Id.*  Following mediation, the parties agreed to a settlement, which they submitted to the district court for approval under Federal Rule of Civil Procedure 23(e).  *Id.*  The district court entered a preliminary order approving the settlement.  *Id.*  Then, the legislation was signed into law, eliminating all of the plaintiffs' FACTA claims.  *Id.*  Six days later, Verizon moved the district court to vacate its order granting preliminary approval of the settlement, which the district court granted.  *Id.*

On appeal, the Third Circuit reversed the district court's vacature of its settlement order.  *Id.*  In its decision, the Third Circuit emphasized three principles, each of which influenced its holding that a later change in the law eliminating the plaintiffs' cause of action did not render the parties' settlement agreement moot or unenforceable.  *Id.* at 593.  First, the Third Circuit noted

the "restricted, tightly focused role . . . for district courts" prescribed by Rule 23, a role that "requir[es] them to act as fiduciaries for the absent class members, but that does not vest them with broad powers to intrude upon the parties' bargain." *Id.* Second, the court emphasized the strong public policy favoring settlement of disputes, finality of judgments, and the termination of litigation—a public policy that is "particularly muscular in class action suits." *Id.* Finally, the court reflected on "jurisprudence hold[ing] that changes in the law after a settlement is reached do not provide ground for rescission of the settlement." *Id.* These principles apply with equal force to Schumacher's case.

First, like the settlement agreement in *Ehrheart*, the settlement agreement reached by SC Data and Schumacher is a binding enforceable contract under general principals of contract interpretation. *Ehrheart*, 609 F.3d at 594 (citing *In re Cendant Corp. Litig.*, 233 F.3d 188, 193 (3d Cir. 2000)). The parties make no allegations of bad faith or illegality with respect to the formation of this contract. Further, the parties reached this settlement during mediation with an experienced mediator, and the agreement was negotiated and executed by qualified counsel on both sides.

SC Data argues the settlement is not an enforceable contract because Rule 23(e) court approval of the parties' settlement is a condition precedent,[1] required as an express term of the contract. This argument is incorrect. The Third Circuit dismissed a similar argument in *Ehrheart*, reasoning that "if this argument [were to be] accepted . . . the settlement process would become meaningless since either party to a class action settlement (or any other type of settlement that requires court approval) could back out of an agreement at any time before court

---

[1] SC Data points to the settlement agreement between the parties, which states:
   Settlement Terms—5/12/16
   Settlement is contingent upon court approval

4

approval and avoid any legal repercussions for breaching the earlier offer and acceptance." *Ehrheart*, 609 F.3d at 594. Likewise, this Court will not allow SC Data to "replay its hand" by using this argument to back out of its settlement. *Id.*

Furthermore, Rule 23 requires the Court to act as a fiduciary for absent class members, not defendants to a class action. *Id.* SC Data attempts to characterize Rule 23 court approval as a condition precedent protective of SC Data, but this approval requirement is meant to protect absent class members. *Id.* By virtue of being a defendant to the lawsuit and represented by its own counsel, SC Data—unlike absent class members—is sufficiently equipped to protect its own interests during settlement negotiations. *Id.* (clarifying "that this [Rule 23] fiduciary protection does not extend to defendants in a class action, who are in a position to protect their own interests during negotiation"). Therefore, "[t]he fact that a settlement agreement is governed by Rule 23 does not diminish its enforceability as a contract." *Id.* at 596.

In finding this settlement to be an enforceable contract, the Court is also persuaded by the "strong presumption" that exists "in favor of voluntary settlement agreements." *Id.* at 594-95. This presumption "is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Id.* To promote this pro-settlement policy, "it is essential that the parties to a class action settlement have complete assurance that a settlement agreement is binding once it is reached." *Id.* at 596. This policy, too, undermines SC Data's condition precedent argument.

SC Data further argues that *Ehrheart* is distinguishable from Schumacher's case. SC Data contends that in contrast to Schumacher, the *Ehrheart* plaintiffs initially *had* claims under FACTA, and it was only after their settlement that legislation was enacted eliminating those

5

claims.  SC Data argues that Schumacher's case is different because she has always lacked standing from the very moment she filed her claims, as well as at the time of settlement.

Even if true, this distinction is inconsequential for many of the same reasons already discussed.  After several months of litigation, SC Data made the informed decision to settle the claims against it.  In weighing the uncertainty of future litigation and new legal precedent like *Spokeo*, SC Data opted to gamble on the certainty of settlement.  SC Data cannot now replay its hand by arguing that the claims it chose to settle have always been invalid in light of a post-settlement decision, *Spokeo*.  To promote the judicial policy favoring settlement, the law must enforce settlements as binding once they are reached.  *Ehrheart*, 690 F.3d at 596.  Therefore, because the parties agreed to a settlement, SC Data "cannot avoid its independent contractual obligations simply because a change in the law confers upon it a benefit that could have altered the settlement calculus."  *Id.*  Adopting SC Data's argument would make settlement a meaningless alternative to trial and would undermine the strong public policy that favors settlement in class action suits.  *Id.* at 593.

SC Data's reliance on *In re New Motor Vehicles Canadian Export Antitrust Lit.* is also unpersuasive.  269 F.R.D. 80 (D. Me. 2010).  In *New Motor*, the district court considered the plaintiffs' motion to certify a damages settlement class and an injunctive settlement class.  *Id.* at 83.  Prior to this motion, the court had previously certified a Rule 23(b)(2) injunctive class, but the First Circuit vacated this certification for lacking a live controversy justifying injunctive relief.  *Id.*  Thus, the issue before the *New Motor* district court was what effect the First Circuit's holding had on the plaintiffs' motion for certification of an injunctive settlement class.  *Id.* at 84.  Ultimately, the court reasoned that the First Circuit's holding required it to conclude that any risk of harm requiring injunctive relief had already disappeared at the time of the injunctive and

6

damages settlements, and further, that no current risk existed. *Id.* at 87. As a result, the court denied the plaintiffs' motion for certification as to the injunctive settlement class because the plaintiffs lacked standing. *Id.*

SC Data argues that the Court lacks the authority to enforce the settlement because Schumacher lacked standing to bring her FCRA claims from the moment she filed the case, just as the *New Motor* plaintiffs lacked standing for the injunctive relief agreed to in their settlement. The procedural posture of Schumacher's case, however, is different. Unlike *New Motor*, the issue before this Court is not whether to certify an injunctive settlement class after its original certification of this very class was vacated on appeal. Rather, this Court is faced with the simpler question of determining whether it has subject matter jurisdiction to enforce a settlement contract entered into by both parties. Therefore, *New Motor* is not relevant to the issue before this Court.

For the previous reasons, Schumacher's standing to bring the FCRA claims underlying this settlement is irrelevant to whether she has standing to enforce the parties' settlement agreement. The Supreme Court's decision in *Spokeo v. Robins* does not change this Court's ability to grant effective relief as to a settlement agreement: nothing in *Spokeo* suggests the non-finality of class action settlements that are pending a district court's Rule 23 approval. *See also, Colella v. Univ. of Pittsburgh*, 569 F.Supp.2d 525, 531 (finding the parties' class settlement agreement of FACTA claims to be binding even after the Clarification Act eliminated those underlying claims, unless something in the Act suggested otherwise). Schumacher has a personal, concrete interest in whether the settlement agreement is enforced, and thus, the Court has the authority to review and approve it.

7

Therefore, in light of "this Court's obligations under Rule 23, [as well as] . . . the strong public policy and judicial preference for settlements, this Court finds no reason permitting, let alone compelling, a district court to disregard a valid, binding contract to settle the litigation." *Id.* Because an enforceable settlement agreement exists, SC Data's motion to dismiss is denied.

## III. Conclusion

For the reasons set forth above, SC Data's motion to dismiss for lack of subject matter jurisdiction, Doc. 16, is denied. Schumacher's request for an order enforcing the settlement agreement is granted. [Doc. 51]. The Court further orders the parties to submit their proposed settlement documents on or before 1/3/2017.

/s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: November 29, 2016
Jefferson City, Missouri