**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **RIA SCHUMACHER** | ) | |
| Individually And On Behalf Of | ) | |
| All Others, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.:  16-04078-CV-C-NKL |
| vs. | ) | |
| | ) | **ORAL ARGUMENTS REQUESTED** |
| **SC DATA CENTER, INC.** | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

## Table of Contents

Table of Contents ...................................................................................................i

Table of Authorities...............................................................................................iii

Statutory Background ...........................................................................................2

Argument ...............................................................................................................4

    A.  Legal Standard ..............................................................................................5

    B.  *Spokeo* Did Not Change Standing Requirements .................................5

    C.  Violations Stemming From Defendant's Purported Disclosure and

        Authorization Form Provide Standing ...................................................6

        1.  Failing to Disclose that a Consumer Report would be Obtained is a

           Concrete Harm .............................................................................6

        2.  Defendant's Failed to Obtain the Plaintiff's Authorization to

           Obtain a Consumer Report ...........................................................9

        3.  Plaintiff has been Deprived of the Common Law Chose of Action .................................10

    D.  Plaintiff's Adverse Action Claims have Standing ...............................10

    E.  The Eighth Circuit has Found Failure to Provide Notice Resulting in the Loss

       of an Opportunity to Contest is a Concrete Harm ...............................11

    F.  The Eighth Circuit's *Citizen* Opinion is Consistent with the Third and Seventh

       Circuits Holding that the Failure to Provide Notice Resulting in the Loss of an

       Opportunity to Contest is a Concrete Harm ........................................12

    G.  Adverse Action Rights are Consistent with Confession and Avoidance

       Common Law Rights ...............................................................................15

    H.  If the Court Determines that the Plaintiff Lacks Standing the Matter

       Should be Remanded ...............................................................................15

i

I.     Oral Arguments Requested ................................................................................................16

Conclusion ........................................................................................................................................16

**Cases**

*Alame v. Norred & Assocs., Inc.,* No. 2:13-CV-04280-NKL, 2014 WL 2574418

(W.D. Mo. June 9, 2014) ....................................................................................7, 9

*Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency,* 836 F.3d 963, 968

(8th Cir. 2016) .......................................................................................................4

*Auer v. Trans Union, LLC,* 902 F.3d 873, 877 (8th Cir. 2018) ...........................4

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563, 127 S. Ct. 1955, 1969 (2007) ...............10

*Boergert v. Kelly Servs., Inc.,* No. 2:15-CV-04185-NKL, 2016 WL 6693104

(W.D. Mo. Nov. 14, 2016), on reconsideration in part, No. 2:15-CV-04185-NKL, 2017

WL 440272 (W.D. Mo. Feb. 1, 2017) .................................................................7, 10, 11

*Campbell v. Adecco USA, Inc.,* No. 2:16-CV-04059-NKL, 2017 WL 1476152,

(W.D. Mo. Apr. 24, 2017) ...................................................................................10, 11

*Carlsen v. GameStop, Inc.,* 833 F.3d 903, 908 (8th Cir. 2016) ..........................5, 9

*Citizens Telecommunications Co. of Minnesota, LLC v. Fed. Commc'ns Comm'n,*

901 F. 3d 991, 1006 (8th Cir. 2018) ....................................................................6, 11, 12, 14

*Crossing at Eagle Pond, LLC, v. Lubrizol Corp.,* 346 F. Supp. 3d 1048

(E.D. Mich. 2018) ...............................................................................................10

*Dutta v. State Farm Mut. Auto. Ins. Co.,* 895 F.3d 1166, 1176 (9th Cir. 2018) ...............14

*Gilberg v. California Check Cashing Stores, LLC,* No. 17-16263, 2019 WL 347027

(9th Cir. Jan. 29, 2019) .......................................................................................8, 9

*Graham v. Catamaran Health Sols. LLC,* No. 16-1161, 2017 WL 3613328,

(8th Cir. Aug. 23, 2017) ......................................................................................4

*Heglund v. Aitkin Cty.,* 871 F.3d 572, 578 (8th Cir. 2017) ................................9

Case 2:16-cv-04078-NKL   Document 96   Filed 02/15/19   Page 4 of 21

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund,* 500 U.S. 72, 89 (1991) ....................15

*Iowa League of Cities v. E.P.A.,* 711 F.3d 844, 870-71 (8th Cir. 2013) ............................................14

*Kelchner v. Sycamore Manor Health Ctr.,* 305 F. Supp. 2d 429, 435

(M.D. Pa. 2004) ...........................................................................................................................3

*Long v. Se. Pennsylvania Transportation Auth.,* 903 F.3d 312, 324-25

(3d Cir. 2018) .........................................................................................................................6, 12

*Public Citizen v. Dep't of Justice,* 491 U.S. 440, 449 (1989) .............................................................6

*Robertson v. Allied Sols., LLC,* 902 F. 3d 690, 695-96 (7th Cir. 2018) ................................13, 14, 15

*Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 239 (4th Cir. 2009) ........................................2

*Schumacher v. SC Data Ctr., Inc.,* 912 F.3d 1104, 1106 (8th Cir. 2019) ...........................................5

*Spokeo, Inv. v. Robins,* 136 S. Ct. 1540 (2016) ...............................................................5, 6, 10, 12

*Tennessee Elec. Power Co. v. TVA,* 306 U.S. 118, 137-138, 59 S.Ct. 366,

83 L.Ed. 543 (1939) ...................................................................................................................6

*Wallace v. ConAgra Foods, Inc.,* 747 F.3d 1025, 1033 (8th Cir. 2014) ...........................................16

**United States Code**

15 U.S.C. § 1681 .............................................................................................................................12

15 U.S.C. § 1681b ..................................................................................................................... passim

15 U.S.C. § 1681e ...........................................................................................................................4

15 U.S.C. § 1681i ...........................................................................................................................12

28 U.S.C. § 1447 .............................................................................................................................15

**United States Senate Reports**

138 Cong. Rec. H9370-03 (1992) (statement of Rep. Wylie) ...........................................................2

140 Cong. Rec. H9797-05 (1994) (statement of Rep. Vento) .....................................................…2

141 Cong. Rec. E121-05 (1995), 1995 WL 18909 ...........................................................................3

iv

S. Rep. No. 104-185 (1995)......................................................................................2, 3, 14

**Federal Rules of Civil Procedure**

Rule 12(b)(1) ......................................................................................................................5

Rule 12(b)(6) ......................................................................................................................5

**Other Authorities**

Black's Law Dictionary 1233 (7th ed. 1999) ..................................................................10

Consumer Reporting Reform Act, Pub. L. No. 104-208, 110 Stat. 3009 (1996) ..............................2

https://www.law.cornell.edu/wex/confession_and_avoidance .......................................15

v

## STATUTORY BACKGROUND

Consumers' right to privacy of information pertaining to their credit, character, and general reputation was a central concern for Congress when it passed the Fair Credit Reporting Act ("FCRA") in 1970. Recognizing the "vital role" that consumer reports play in the modern economy, Congress sought to encourage those who handle the sensitive information in those reports to "exercise their grave responsibilities" in a way that "ensure[s] fair and accurate credit reporting." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 239 (4th Cir. 2009). The FCRA fosters these purposes through a set of interlocking requirements—including strict restrictions on the procurement or use of reports and detailed requirements about how consumers must be informed of their rights. See 15 U.S.C. § 1681b.

Congress found the use of consumer reports to screen current and prospective workers, and the resulting invasion of workers' privacy, particularly problematic. As one legislator explained, the FCRA's protections created "new safeguards to protect the privacy of employees and job applicants," and the Act as a whole was "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (1994) (statement of Rep. Vento); see also 138 Cong. Rec. H9370-03 (1992) (statement of Rep. Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections"). When passing the amendment to the FCRA that added the provision at issue in this case, Congress sought to expand on these privacy protections and voiced a strong "concern[]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper invasion of privacy." S. Rep. No. 104-185, at 35 (1995).

The invasion of privacy suffered by the Plaintiff when the Defendant obtained her report is a clear form of concrete harm that Defendant simply ignores. Indeed, invasions of privacy were the very harm that drove the passage of the Consumer Reporting Reform Act ("CRRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), which added the standalone disclosure requirement. In introducing the bill, House Speaker Henry

2

Gonzalez explained that "the current Fair Credit Reporting Act does not go far enough to prevent . . . incursions into consumers' privacy from occurring." 141 Cong. Rec. E121-05 (1995), 1995 WL 18909. The CRRA was thus introduced to provide additional layers of protections and rights to consumers, given that "the implications for errors and invasions of privacy are staggering." *Id*. The legislative record in the Senate demonstrates that privacy concerns also motivated the Senate's passage of the standalone disclosure requirement: the Senate noted that "the FCRA permits employers to obtain consumer reports pertaining to current and prospective employees" and expressed "concern[s], however, that **this provision may create an improper invasion of privacy**." S. Rep. 104-185, at 35 (1995) (emphasis added); see also *Kelchner v. Sycamore Manor Health Ctr.*, 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004) (noting that the act "sought to protect the privacy interests of employees and potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers"), 135 F. App'x 499 (3d Cir. 2005).

In response to these concerns, Congress included in the FCRA a flat prohibition on the procurement of a job applicant's consumer report for employment purposes unless (1) a clear and conspicuous, "standalone" disclosure is provided, and (2) the job applicant authorizes the procurement. 15 U.S.C. § 1681b(b)(2). The statute states in pertinent part: [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--(i) a clear and conspicuous disclosure has been made in writing to the consumer . . ., in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. *Id*. In short, absent strict compliance with the statute's requirements, it is an actionable invasion of privacy for a company to obtain a job applicant's report for employment purposes.

## ARGUMENT

In the matter before this Court, the Plaintiff has alleged that Plaintiff: (1) was not provided notice that a consumer report would be procured for employment purposes in the disclosure, (2) did not authorize the procurement of a Consumer Report; (3) did not receive a copy of her Consumer Report prior to Defendant's adverse action; and (4) was not provided any time to contest or explain the information contained within the consumer report.

An inquiry into standing is not an assessment of the merits of a plaintiff's claim.  In assessing a plaintiff's Article III standing, we must "assume that on the merits the plaintiffs would be successful in their claims." Accordingly, a plaintiff need not prove an unlawful action to have standing, because "whether a statute has been violated 'is a question that goes to the *merits* ... and not to constitutional standing.' " *Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016). Therefore, if a claim presents a question of statutory interpretation under which one interpretation leads to possible relief and the other does not, standing exists.  ("[W]hether a statute has been violated 'is a question that goes to the *merits* ... and not to constitutional standing.' " *Graham v. Catamaran Health Sols. LLC,* No. 16-1161, 2017 WL 3613328, at *4 (8th Cir. Aug. 23, 2017)(citations omitted).

Thus, in assessing whether Schumacher has standing, the court is required to assume that: (1) Schumacher did not receive a disclosure that a consumer report would be obtained for employment purposes; (2) Schumacher did not authorize the Defendant to obtain a consumer report; (3) Schumacher was not given a copy of her consumer report and (4) Schumacher was not provided an opportunity to address, contest or explain the consumer report before being denied employment[1].

---

[1] Defendant may rely on *Auer v. Trans Union, LLC*, to argue that the Eight Circuit has found similar claims to lack standing. 902 F.3d 873, 877 (8th Cir. 2018).  Auer found standing was not present because the plaintiff had consented to the background check and had alleged, in her complaint, that she understood the purpose of the form used by the Defendant.  *Id.* Here, Plaintiff has pled that the Defendant failed to disclose that a consumer report would be obtained and that the Plaintiff did not consent to the procurement of a consumer report. There is no evidence whatsoever that the Plaintiff understood the purpose of the Defendant's Form.

4

**A.     Legal Standard**

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' " on jurisdiction.  In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Carlsen v. GameStop, Inc*, 833 F.3d 903, 908 (8th Cir. 2016).  Defendant's Motion to Dismiss (Doc. 17) is crafted as a facial attack; inasmuch as no affidavits or other evidence have been submitted in connection with the motion. Therefore, the Court must apply the same standards it would apply to a motion to dismiss under Rule 12(b)(6), and accepts as true the factual allegations contained in the complaint.  *Id.*

**B.     *Spokeo* Did Not Change Standing Requirements**

In *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016), the Supreme Court addressed Article III standing as it relates to civil actions for statutory violations.  *Spokeo*, … was not a change in the substantive law.  *Schumacher v. SC Data Ctr., Inc*., 912 F.3d 1104, 1106 (8th Cir. 2019).  *Spokeo* simply reiterated that the Article III standing inquiry asks not only whether an injury is particularized, but also whether it is concrete— "that is," whether it "actually exist[s]."  *Id*.  Elaborating on the meaning of concreteness, the Court in *Spokeo* distilled several "general principles" from its prior cases without establishing new law.  *Id*. at 1549-50.  First, the Court acknowledged that, although tangible injuries (such as physical or economic harm) are "perhaps easier to recognize" than other concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm."  *Id*. at 1549.  Second, "[i]n determining whether an intangible harm constitutes injury in fact, history and the judgment of Congress play important roles."  *Id*.  With respect to "history," if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court. *Id*.  The Third Circuit recently addressed this issue finding:

SEPTA points to hypotheticals in *Spokeo* to argue that Plaintiffs' injury is bare and procedural, and thus not a concrete injury-in-fact. In *Spokeo*, the Court said that certain FCRA violations would "result in no harm," such as where a consumer report contains an immaterial inaccuracy like an incorrect zip code, or where the report is "entirely accurate" but its use is not disclosed. *Id*. at 1550. SEPTA contends that—as in the second hypo—Plaintiffs' consumer reports were accurate, even if they did not receive the required notice. SEPTA's argument, however, depends on its view that the sole purpose of the § 1681b(b)(3) disclosures is to allow the correction of inaccuracies. As we have explained, *supra* Part III.A, the right to the disclosures is the same whether the report is accurate or not. *Spokeo* naturally focused on accuracy; the plaintiff there had alleged that his consumer report was inaccurate *325 and therefore violated a different provision of the FCRA, § 1681e(b). *Spokeo*'s focus on accuracy in connection with an alleged § 1681e(b) violation does not negate the language and purpose of § 1681b(b)(3), which is at issue here.

*Long v. Se. Pennsylvania Transportation Auth.*, 903 F.3d 312, 324–25 (3d Cir. 2018).

## C. Violations Stemming From Defendant's Purported Disclosure and Authorization Form Provide Standing

Plaintiff claims that the Defendant's form harmed the Plaintiff and class members in three separate ways. First, the disclosure fails to disclose that a consumer report would be procured for employment purposes. The failure to disclose mandated information is sufficient to establish a concrete injury as recognized by the Supreme Court and the Eighth Circuit. *See Public Citizen v. Dep't of Justice,* 491 U.S. 440, 449 (1989); *See Citizens Telecommunications Co. of Minnesota, LLC v. Fed. Commc'ns Comm'n,* 901 F.3d 991, 1006 (8th Cir. 2018); Complaint Ex. 1. Second, the Defendant failed to obtain the Plaintiff's authorization to obtain her consumer report for employment purposes. Without proper authorization, the Defendant's procurement of a consumer report constitutes an invasion of the Plaintiff's privacy. Finally, the Defendant's disclosure form contains two separate releases of liability. The releases strip the Plaintiff and other class member of a chose in action. The loss of the chose in action is a taking recognized by common law as a concrete harm. *Tennessee Elec. Power Co. v. TVA*, 306 U.S. 118, 137–138, 59 S.Ct. 366, 83 L.Ed. 543 (1939).

### 1. Failing to disclose that a consumer report would be obtained is a concrete harm

Plaintiff has alleged that the Defendant's Form did not disclose that a Consumer Report may be procured for employment purposes. ¶38. Plaintiff has alleged that nowhere in the Defendant's Form does

6

it even mention the words consumer report. ¶39. These allegations are sufficient to establish standing. *Boergert*, 2016 WL 6693104, at *4.

Defendant's form titled Authorization for Release of Information fails to disclose that a consumer report may be obtained for employment purposes. (Complaint ¶38). Additionally, the Defendant's form failed to adequately address the scope of the Defendant's incursion into the Plaintiff's personal information. As this Court has held in the past there is a major difference in a general form of search and a consumer report. *Alame v. Norred & Assocs., Inc.*, No. 2:13-CV-04280-NKL, 2014 WL 2574418, at *4 (W.D. Mo. June 9, 2014) (there is little basis for concluding that a general authorization to collect background information is sufficient to satisfy the obligation to specifically disclose that a consumer report may be obtained.).

Despite, at best, only notifying the Plaintiff that a criminal records search would be performed, the Defendant requested and obtained a social security trace/address locator report. (Doc. 32 ex. 4). A social security trace is not a criminal background search. Instead, a SSN Trace is used as a tracking beacon to uncover any location the Plaintiff has lived and/or that is associated with the Plaintiff's Social Security Number. The Defendant did not disclose and has never argued that it disclosed the fact that it would obtain a social security trace/address locator report. Defendant's failure to disclose that it would obtain a Consumer Report and/or its failure to disclose the full scope of the report it would obtain for employment purposes is a deprivation of statutorily mandated information sufficient to establish the existence of an injury for standing purposes. *Boergert*, 2016 WL 6693104, at *4.

Moreover, Plaintiff has established standing via the allegations in paragraph 10. Plaintiff has alleged that the Defendant failed to provide a clear and conspicuous disclosure that a Consumer Report would be obtained for employment purposes in a disclosure that consist solely of the disclosure that a Consumer Report may be obtained for employment purposes. (Doc. # ¶10). Defendant did not provide the

7

Plaintiff or Putative Class members with a clear and conspicuous disclosure in writing in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes[2].

In *Gilberg v. California Check Cashing Stores, LLC*, No. 17-16263, 2019 WL 347027, at *6 (9th Cir. Jan. 29, 2019) the Ninth Circuit Court of Appeals held that a disclosure form that is not clear is sufficient to establish Article III standing. The court found that the defendant's disclosure form which included state laws alongside FCRA requirements was not clear and conspicuous. *Gilberg* found that the surplus language in the disclosure caused a concrete harm because the extraneous information "is as likely to confuse as it is to inform". *Id* at *5. Because the surplus language is likely to confuse as it is to inform the disclosure was not provided and thus standing exists. *Id*.

The Defendant's Form includes multiple pieces of extraneous information that are more likely to confuse than inform. *See generally* Complaint. For instance, the disclosure form incoherently refers to some unidentified "company" no fewer than ten (10) times. Defendant's reference to "company" is incomprehensible. A reasonable person would have no idea whether the "company" is referring to Sterling Infosystems, SC Data, Colony Brands Inc., or some other entity. This confusion is further complicated by the fact that SC Data denies it is d/b/a Colony Brands Inc. yet the Consumer Report indicates it was produced to Colony Brands Inc. despite the fact that SC Data d/b/a Colony Brands Inc. is the Defendant in this matter and SC Data is the entity that signed the settlement agreement between the parties. Additionally, the disclosure form, which never states that a consumer report will be obtained for employment purposes, includes two releases of liability, references to motor carrier law, acknowledgements regarding truthfulness, deceptive language regarding Defendant's alleged adverse action procedures, and personal information sections akin to an employee application. This type of

---

[2] Oddly, Defendant denies this allegation in spite of denying it obtained a Consumer Report elsewhere.

extraneous information is more likely to confuse than inform; resulting in a concrete harm via the overshadowing of any alleged disclosure. *Id*.

2.  **Defendant's Failed to Obtain the Plaintiff's Authorization To Obtain a Consumer Report**

The same form allegedly used to disclose that a consumer report would be procured was also used to garner authorization from the Plaintiff to obtain a consumer report. The problem is that the form does not authorize the procurement of a consumer report. (Complaint ¶¶ 95(a), 100). Instead, as discussed *supra*, the form at best discloses that the Defendant will conduct a criminal records search. *See* Complaint Ex. 1. "There is little basis for concluding that a general authorization to collect background information is sufficient to satisfy the obligation to specifically disclose that a consumer report may be obtained." *Alame*, 2014 WL 2574418, at *4. Further, according to the Defendant, the alleged authorization limits the Defendant's search to criminal records. As discussed *supra*, this is inaccurate as more than criminal record information was sought and procured. An unauthorized intrusion into a person's personal information provides standing. *Heglund v. Aitkin Cty.*, 871 F.3d 572, 578 (8th Cir. 2017). The disclosure fails to explain how the authorization is all-encompassing and how that would affect the Plaintiff's rights. *Gilberg* at * 5. Such a failure provides standing. *Id*.

Any argument by the Defendant that their authorization was close enough or should be interpreted as being sufficient is an improper merit-based assessment. "[I]t is crucial ... not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." *Carlsen*, 833 F.3d at 909. Here Plaintiff's factual allegations regarding an insufficient disclosure and lack of authorization are violations that constitute concrete harms for standing purposes and any arguments regarding the sufficiency of the disclosure or the authorization are merits based and should be rejected. *Id*. The Defendant failed to obtain an authorization to obtain a consumer report for employment purposes.

9

3.     **Plaintiff has Been Deprived of the Common Law Chose of Action**

In addition to the foregoing information and privacy injuries, the Supreme Court has held that standing exists if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court. *Spokeo*, 136 S.Ct. at 1549-50. Thus, once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969 (2007).

"Personal property" is "any moveable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary 1233 (7th ed. 1999). A cause of action is a "piece" of intangible property called a "chose in action." *Crossing at Eagle Pond, LLC v. Lubrizol Corp.*, 346 F. Supp. 3d 1048 (E.D. Mich. 2018). Defendant's Form included two releases of liability that purport to deprive the Plaintiff of her right to a chose in action against an unidentified "company and/or its representatives." *See* Complaint ¶¶ 36,37, 48-51, Ex. 1.  Said releases of liability are an impermissible attempt to foreclose the Plaintiff's right to a chose in action.  Plaintiff's allegations regarding the illegality of the two releases of liability in Defendant's Form, which were designed to surreptitiously deprive Plaintiff of a chose in action, are sufficient to satisfy Article III standing requirements.  A plaintiff's right to a chose in action is sufficient to satisfy Article III standing requirements. *Crossing*, 346 F. Supp. 3d at 1048.

**D.     Plaintiff's Adverse Action Claims Have Standing**

In weighing the sufficiency of a Plaintiff's Adverse Action claims, this Court has held, on two prior occasions, that a Plaintiff may not establish Article III standing in the absence of an allegation that the Consumer Report was inaccurate, and/or that compliance with the FCRA's pre-adverse action notice requirement would have resulted in the Defendant reaching a different conclusion about Plaintiff's qualification for employment.  *Boergert*, 2016 WL 6693104 at *1; *Campbell v. Adecco USA, Inc.*, No. 2:16-

10

CV-04059-NKL, 2017 WL 1476152, at *3 (W.D. Mo. Apr. 24, 2017). This Court's past position conflicts with recent Eighth Circuit precedent as well as opinions by the Third and Seventh Circuit. Moreover, similar rights are found in the common law rights of avoidance and confession.

**E.     The Eighth Circuit Has Found the Failure to Provide Notice Resulting in the Loss of an Opportunity to Contest is a Concrete Harm**

With regard to addressing the issue of standing in Adverse Action claims, this Court has applied the Eighth Circuit's decision in *Braitberg, citing Boergert at *4.* Counsel respectfully submits that *Braitberg* is inapplicable. Counsel requests the Court consider the more recent Eighth Circuit opinion *Citizens.* In *Citizens*, the plaintiffs filed suit after the FCC issued orders that altered the regulations concerning business data services. *Citizens,* 901 F.3d at 1006. Plaintiffs challenged the altered regulations because the notice issued by the FCC did not cover all forms of alterations and the plaintiffs were not provided an opportunity to argue against the additional alterations. *Id.* The court held regarding the inadequate notice, "While the intervenors may be correct that everything that needed to be said regarding transport services was said during the twelve years preceding the 2017 Order, the law regarding prejudice under the APA ensures procedural integrity. Losing the opportunity to dissuade an agency from adopting a particular rule is prejudicial." *Id.* The court went on to find that requiring more than a procedural violation of a notice requirement in order to find prejudice would virtually repeal the notice law. *Id.* Plaintiffs in *Citizens* may or may not have defeated the alterations to the regulations, but the fact that they were not provided the change to make their case was prejudicial. *Id.*

The FCRA requires an employer before taking any adverse action to provide a copy of the consumer report, an opportunity to contest the consumer repot and a copy of the FCRA Summary of Rights. 15 U.S.C §1681b(b)(3). Here, Defendants did not abide by the FCRA's adverse action mandates. Plaintiff was informed via phone that her conditional offer of employment was withdrawn. The Plaintiff was not provided with a copy of the consumer report before the Defendant took its adverse action. By not

providing the Plaintiff with a copy of the consumer report prior to the adverse action the Plaintiff was stripped of any opportunity to contest, address, or explain the information contained within the consumer report. Moreover, the Defendant unlawfully deprived the Plaintiff of the opportunity to contest the adverse action and to dissuade the Defendants from terminating her employment. Whether her contestation of the adverse action would have changed the decision is irrelevant; what matters is that she was denied the opportunity to contest the adverse action as the law requires thus causing a concrete harm. *Id*.

**F. The Eighth Circuit's Citizen Opinion is Consistent with the Third and Seventh Circuits Holding that the Failure to Provide Notice Resulting in the Loss of an Opportunity to Contest is a Concrete Harm**

The *Citizen* opinion is consistent with recent holdings from the Third and Seventh Circuits regarding if a violation of 15 U.S.C. §1681b(b)(3) constitutes a concrete harm. Both the Third and Seventh Circuits have held that an employer's failure to provide a copy of the consumer report and a reasonable opportunity to contest or explain the consumer report is a concrete harm.

The Third Circuit applied *Spokeo's* directives; we "look to the text of the statute, rather than the legislative history, to interpret a statute or determine legislative intent as an aid to interpretation." *Long*, 903 F.3d at 318. "The text of § 1681b(b)(3) requires not just that the employer "shall provide" the consumer report and FCRA rights disclosure, but that it must do so "before taking any adverse action… The statute should be construed so that words and phrases are not "superfluous, void, or insignificant." … The phrase "before taking any adverse action" should, therefore, have some purpose, and this purpose is illuminated by the congressional findings incorporated into the statute's text. 15 U.S.C. § 1681." *Id*. The defendant argued to the Third Circuit that only when the adverse action was based on an inaccuracy did concrete harm exists. The Third Circuit rejected the argument stating, "the subsection is not so narrow. … The right to pre-adverse-action disclosures serves all of the purposes discussed above: accuracy, relevancy, proper utilization, and fairness. The individual's right to dispute and correct consumer reports is provided elsewhere in 1681i…, so according to the statute's structure, § 1681b is not limited to situations where the

12

report is inaccurate." *Id*. Section 1681b(b)(3) provides consumers a right to know beforehand when their

consumer report may be used against them and creates the possibility that the consumer may respond to

inaccurate or negative information. *Id*.

The Seventh Circuit distinguished receiving the consumer report after the adverse action as

opposed to before the adverse action as the law allows:

> As one can see, there is no reference to potential inaccuracies or any other specific reason for the disclosure. This contrasts markedly with the following paragraph, section 1681b(b)(3)(B) ("subpart B"), which creates an exception from subpart A for employers taking an adverse action against an applicant who applies by mail, telephone, or computer for a position regulated by the Secretary of Transportation (*e.g.*, truck drivers). An employer of would-be \*696 truck drivers, for example, has no duty to provide a copy of the actual report; it is enough to notify the applicant that an adverse action was based on the report. 15 U.S.C. § 1681b(b)(3)(B)(i)(I). The employer must also notify the applicant that she may "request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report." *Id*. § 1681b(b)(3)(B)(i)(IV). Both notifications can be provided up to three business days after the adverse action. *Id*. § 1681b(b)(3)(B)(i).

> Only subpart (A) compels disclosure of the report itself, and that provision requires disclosure *prior to* any adverse action. This unique pre-adverse action requirement assures that the applicant will have a chance to review the actual document on which the employer relied, and that she can do so with time to respond to unfavorable information. Unlike subpart (B), which explicitly limits the range of disputes to "accuracy or completeness," subpart (A) contemplates a broad opportunity to respond.
> Subparts (A) and (B), read together, indicate that an employer's disclosure obligations under (A) exist to serve interests beyond the problem of inaccurate reports. Other parts of the Act corroborate that conclusion. In order to see why this is so, it is helpful to recall that the Act identifies at least three distinct actors with respect to any consumer report. A consumer reporting *agency* aggregates data and creates the report. Agencies then supply reports to *users* (*e.g.*, employers), which rely on them to decide the fate of *consumers* (*e.g.*, job applicants).

*Robertson v. Allied Sols., LLC*, 902 F.3d 690, 695–96 (7th Cir. 2018). Any argument by the Defendants that

the Plaintiffs would have suffered an adverse action regardless of the rights provided by the FCRA has also

been addressed and rejected by the Seventh Circuit:

> "that Robertson has not pleaded what she may have said if given the chance to respond, or that she may not have convinced Allied to honor its offer, is immaterial to the substance of her interest in responding. Article III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit."

13

*Robertson*, 902 F.3d at 697.

The lone appellate adverse action precedent that favors the Defendant is *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1176 (9th Cir. 2018). *Dutta* involves a plaintiff that applied for employment with defendant's Agency Career Track ("ACT"), a consumer credit report was procured concerning the plaintiff, and defendant subsequently denied the plaintiff admission to the ACT program because of information in the consumer credit report. The district court granted the defendant's Motion for Summary Judgment. Plaintiff appealed. In upholding the district court's dismissal, the Ninth Circuit ruled that plaintiff's failure to address defendant's declaration resulted in the dismissal of plaintiff's claims. *Id.* at 1176. Thus, plaintiff respectfully submits that, for the most part, *Dutta* is inapplicable to the facts of this case because the Defendant's motion lacks any supporting affidavit[3].

The one aspect of *Dutta* that may be worth noting is its symmetry regarding concreteness with the Eighth Circuit's subsequent opinion in *Citizens*. In *Dutta,* the Ninth Circuit held that the Adverse Action mandates of the FCRA were established to protect consumer's concrete interests.

> Given Congress's "concern[ ] that the ability of employers to obtain consumer reports on current and prospective employees may unreasonably harm employees if there are errors in their reports," S. Rep. No. 104-185, at 35, it is reasonable to infer that Congress intended by its enactment of § 1681b(b)(3) to provide a means to guard against that threat by not requiring "any additional showing of injury." *Spokeo II*, 867 F.3d at 1114. Furthermore, the dissemination of false information potentially harmful to future employment is analogous to common law concerns with defamation or libel that causes material damage—a harm "that has traditionally been regarded as providing a basis for a lawsuit in [both] English [and] American courts." *Spokeo I*, 136 S.Ct. at 1549; *see also Spokeo II*, 867 F.3d at 1114–15 (noting relationship between curbing inaccurate credit information and defamation and libel). Having made a showing that "the statutory provision[ ] at issue [was] established to protect his concrete interests,…."

*Dutta* at *1175.. This holding comports with longstanding Eighth Circuit precedent. *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 870-71 (8th Cir. 2013).

---

[3] The Reply filed by the Defendant in this matter attached affidavits but the original motion lacks any supporting affidavit.

14

**G.    Adverse Action Rights Are Consistent with Confession and Avoidance Common Law Rights**

Confession and avoidance is a common-law plea in a civil case in which a party confesses an allegation but alleges additional facts to avoid the intended legal effect of the original allegation. https://www.law.cornell.edu/wex/confession_and_avoidance (last visited February 12, 2019). In applying the common law right of confession and avoidance to the FCRA's adverse action mandates the Seventh Circuit stated:

> The substantive interest behind a user's disclosure obligation is the one at issue here: allow the consumer to review the reason for any adverse decision and to respond. These rights are independent of any underlying factual disputes. A consumer might, for example, wish to concede the facts presented in the report but to bring additional facts to the employer's attention that put matters in a better light for the consumer. In other words, the consumer might wish to use the "confession and avoidance" option that existed at common law.

*Robertson v. Allied Sols., LLC*, 902 F.3d 690, 696 (7th Cir. 2018).  That Robertson has not pleaded what she may have said if given the chance to respond, or that she may not have convinced Allied to honor its offer, is immaterial to the substance of her interest in responding. Article III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit. *Id.* at 697.  Here, the Plaintiff was clearly deprived of the right to address the information in her Consumer Report.

**H.    If The Court Determines that the Plaintiff Lacks Standing The Matter Should be Remanded.**

Should the Court disagree with the Third, Seventh and Eighth Circuit and determine that Plaintiff lacks standing, it cannot grant Defendant's requested remedy of dismissal. This case was originally filed in state court and removed by Defendant. The removal statute provides, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (emphasis added). The language of this statute is mandatory. *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991). As the Eighth Circuit has noted, if jurisdiction is lacking and "the case did not originate in federal court but was removed there by the defendants, the federal court must

15

remand the case to the state court from whence it came." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014).

**I.        Oral Arguments Requested**

Plaintiff would request that the Court allow oral arguments on the Defendant's Motion.

**CONCLUSION**

Plaintiff requests that this Court reject the Defendant's motion and allow the settlement process to be finalized.

<div style="margin-left: 50%;">

Respectfully submitted,

By: /s/ Jayson A. Watkins
Charles Jason Brown MO 49952
Jayson A. Watkins MO 61434
Brown & Associates LLC
301 S. US 169 Hwy
Gower Missouri 64454
Tel: 816-505-4529
Fax: 816-424-1337
brown@brownandwatkins.com
watkins@brownandwatkins.com
ATTORNEYS FOR PLAINTIFF

</div>

**Certificate of Service**

I hereby certify that a true and correct copy of the above and foregoing was sent on February 15, 2019 via ECF to all Counsel of Record.

<div style="margin-left: 50%;">

/s/ Jayson A. Watkins
Attorney for Plaintiff

</div>

16